UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JEFFREY GOODWIN,            : | | |
|     Plaintiff,            : | | |
|                               : | | |
| v.            : | | 3:15-cv-00789-WWE |
|                               : | | |
| CITY OF NEW HAVEN and   : | | |
| DEAN ESSERMAN,             : | | |
|     Defendants.           : | | |

**MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS**

      The Court initially dismissed plaintiff's claims after defendants moved to dismiss and plaintiff failed to respond. Aside from plaintiff's neglect, plaintiff's original complaint failed to raise a right to relief above the speculative level. After the Court's order dismissing the case was entered, plaintiff moved for reconsideration based on his unintentional failure to file responses, and the Court granted plaintiff permission to amend his complaint to address its deficiencies.

      Defendants have now moved to dismiss plaintiff's amended complaint in its entirety, referencing and repeating arguments proffered in their original motions. Indeed, plaintiff's amended complaint is substantially similar to his original – the most notable difference being the removal of certain allegations that undercut the theory of his case.

      Plaintiff's amended complaint includes claims of gender discrimination and retaliation in violation of Title VII of the Civil Rights Act and the Connecticut Fair Employment Practices Act (Counts I and II); municipal liability (Count III); violation of constitutional rights to equal protection, due process, and freedom of speech against Chief Esserman in his individual capacity (Count IV); and intentional infliction of emotional distress against Chief Esserman in his individual capacity (Count V).

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Stripped of its labels, conclusions, and formulaic recitations of elements of causes of action, plaintiff's amended complaint offers few facts.

On July 21, 2010, the New Haven Police Department issued a dress code policy for the Investigative Services Unit, of which plaintiff was a member. Plaintiff alleges that the policy "was more strict regarding male officers [as compared to] similarly situated female officers," but plaintiff does not specify any differences in policy other than to say that female detectives are permitted to dress in a manner appropriate for the weather while male counterparts are not. Plaintiff communicated his concerns about perceived gender bias on many occasions, but defendants did nothing to change the policy.

On July 1, 2012, plaintiff authored a "Memorandum and Petition" seeking a revision of the dress code, asserting that such revision would "allow male detectives to perform their job functions more effectively[,] safely, and beneficially ... particularly in very hot or inclement

weather." On July 8, 2012, plaintiff provided a copy of the memo to his union, which forwarded a copy to Assistant Chief Archie Generoso, who responded with anger at the following morning's lineup.

On July 9, 2012, plaintiff received a letter from Chief Esserman, ordering him to report the next day for discipline. Esserman issued plaintiff a letter of reprimand.

On December 20, 2012, Esserman again called plaintiff into his office for the purpose of imposing discipline. Plaintiff provides no details of this meeting.

Plaintiff alleges that supervisors told him to lay low because he was being targeted by the Department.

On July 7, 2013, a particularly hot day, a sergeant told plaintiff to go home and change his outfit to conform with the dress code. A female detective who was also violating policy was not forced to change outfits. Plaintiff left work that day because he was not feeling well.

On September 19, 2013, Esserman ordered plaintiff to his office for the purpose of imposing discipline but then ordered that plaintiff return on another date.

On an unspecified date, Esserman suspended plaintiff for two days. Plaintiff asserts that the punishment was based on an alleged violation of the dress code and that no such punishment was imposed on similarly situated female detectives, despite their routine and open violation of the dress code policy.

Plaintiff alleges that the true motivation for "such harsh punishment" was his complaints about the mistreatment, harassment, discrimination, and retaliation he was suffering.

Nevertheless, plaintiff's complaint is deficient of further factual enhancement of these essentially "naked assertions." See Iqbal, 556 U.S. 662, 678 (2009).

Although plaintiff's allegations are arguably consistent with a defendant's liability, they stop short of the line between possibility and plausibility of entitlement to relief, especially considering the deference afforded police departments in the arena of uniformity regulations. See Kelley v. Johnson, 425 U.S. 238, 247 (1976).

In Kelley, the Supreme Court considered the permissibility of a police regulation establishing certain hair-grooming standards applicable to male members of the Suffolk County Police Department. Id. at 239-49.  Although the challenge in that case focused on the liberty interest protected by the Fourteenth Amendment, the Court's decision emphasizes that claims of uniformed civilian service members are not treated for constitutional purposes the same as similar claims by a members of the general public.  See id.

> Respondent's employer has, in accordance with its well-established duty to keep the peace, placed myriad demands upon the members of the police force, duties which have no counterpart with respect to the public at large. Respondent must wear a standard uniform, specific in each detail.
>
> \*\*\*
>
> Here the county has chosen a mode of organization which it undoubtedly deems the most efficient in enabling its police to carry out the duties assigned to them under state and local law.  Such a choice necessarily gives weight to the overall need for discipline esprit de corps, and uniformity.
>
> \*\*\*
>
> The promotion of safety of persons and property is unquestionably at the core of the State's police power, and virtually all state and local governments employ a uniform police force to aid in the accomplishment of that purpose. Choice of organization, dress, and equipment for law enforcement personnel is a decision entitled to the same sort of presumption of legislative validity as are state choices designed to promote other aims within the cognizance of the State's police power. Having recognized in other contexts the wide latitude accorded the government in the "dispatch of its own internal affairs," we think Suffolk County's police regulations involved here are entitled to similar weight.
>
> \*\*\*

> The overwhelming majority of state and local police of the present day are uniformed. This fact itself testifies to the recognition by those who direct those operations, and by the people of the States and localities who directly or indirectly choose such persons, that similarity in appearance of police officers is desirable. This choice may be based on a desire to make police officers readily recognizable to the members of the public, or a desire for the esprit de corps which such similarity is felt to inculcate within the police force itself.

Id. at 245-48.

Considered in context with the authority of police departments to establish uniformity regulations, plaintiff's basic allegations do not implicate his constitutional rights to equal protection, due process, and freedom of speech. In addition, there is no basis for *Monel* liability (Count III) absent an underlying constitutional violation. Segal v. City of New York, 459 F. 3d 207, 219-20 (2d Cir. 2006). Nor does plaintiff's disagreement with the Department's dress code policy, as alleged, establish an inference of gender discrimination or retaliation under Title VII and the Connecticut Fair Employment Practices Act.

Indeed, the only facts alleged by plaintiff concerning the discriminatory nature of the dress code are that the dress code policy "was more strict regarding male officers" and not "fairly" enforced as to female detectives. The Court is left in the dark about the specifics of plaintiff's grievances and the basis for his contention that the policy is discriminatory. Plaintiff's facts "do not permit the court to infer more than the mere possibility of misconduct[.]" See Iqbal 556 U.S. at 679.

To make out a *prima facie* case of retaliation under Title VII, a plaintiff must demonstrate that (1) he engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action. Kelly v. Howard I. Shapiro & Associates Consulting Engineers, P.C., 716 F.3d 10, 14 (2d Cir. 2013). "An employee's complaint may

qualify as protected activity, satisfying the first element of this test, "so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law."  Id.  Here, again, the Court cannot determine from plaintiffs amended complaint whether plaintiff reasonably believed that defendants' actions violated the law.

Finally, plaintiff's intentional infliction of emotional distress claim will be dismissed, as Plaintiff has failed to allege extreme and outrageous conduct.  See Morrissey v. Yale University, 268 Conn. 426, 428 (2004) ("Liability for intentional infliction of emotional distress has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.").

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted.  The Clerk is instructed to close this case.

Dated this 6th day of April, 2017, at Bridgeport, Connecticut.

             /s/Warren W. Eginton
             WARREN W. EGINTON
             SENIOR UNITED STATES DISTRICT JUDGE